Argued November 2, reversed November 23, 1960

# LAMOREAUX *v.* LAMOREAUX

357 P. 2d 273

*R. Thomas Gooding* and *S. H. Burleigh*, La Grande, argued the cause for the appellant. With Gooding on the brief were Burleigh & Carey, La Grande, and Edward E. Grant, Enterprise.

*Robert V. Chrisman*, Enterprise, and *Teunis J. Wyers*, Hood River, argued the cause for the respondent. With Wyers on the brief were Chrisman & Ricker, Enterprise.

Before McAllister, Chief Justice, and Perry, Sloan, O'Connell, Goodwin and King, Justices.

SLOAN, J.

Plaintiff was awarded a decree of divorce. Defendant appeals. Defendant did not counter-claim. She has sought only to avoid the divorce. This appeal presents one issue: Did plaintiff prove that defendant was guilty of such cruelty as to render his life burdensome?

Plaintiff has been a professional forester. His working life has been consecrated, with unfailing zeal, to gain material and professional success in his career. He became acquainted with defendant in 1950 when he was working in the lumber industry in British Columbia. The area of his employment was settled by people of the Dukhobor faith. Defendant was of that faith. After a comparatively short courtship the parties were married in Coeur d-Alene, Idaho. For some years thereafter the parties lived a somewhat nomadic life in various logging camps and communities in Washington and Canada. Eventually they moved to Wallowa County where the events which precipitated this proceeding occurred. One child has been born to them.

We will not detail the evidence. It is sufficient to show that plaintiff gained a good position with a large lumber company and provided material comforts for his family. He devoted long hours each day to his employment and found little time for his family. It would appear that when he did take time away from his work he rarely spent much of it with his family.

The difference in social, economic and cultural background and in language appears to be the prime cause of the parties' differences. Plaintiff complained

that he could not communicate with his wife; that when he attempted to discuss problems with her she would talk in circles while he was direct and forthright. Plaintiff's counsel points to the testimony of defendant to indicate her circuitous thinking processes. Our review of the record shows little difference between the parties in this respect. Neither of the parties gave many direct answers and specific events were left vague and uncertain.

The most specific charge against defendant was that she had interferred with his employment. This arose after defendant had received some telephone calls from some alleged anonymous person who informed defendant that her husband was engaging in extra-marital activities. Defendant was admittedly not well at the time; she became emotionally distressed and called plaintiff's superior officer and asked that official to come to her home. She there informed that official that she and her husband were having some difficulty. She did this without notifying her husband of her intention and, apparently, before she told plaintiff of her concern. This was an act of indiscretion on her part but there is no evidence that this event actually affected plaintiff's employment in any way. It caused plaintiff justifiable worry, but no one testified that plaintiff's bosses thereafter had any less confidence in plaintiff's ability to do what he was hired to do. This one act of defendant would not justify a decree of divorce.

One who marries in a foreign land and brings to this country a spouse having a materially different social and cultural background must be blind if he does not anticipate problems of social adjustment. The solution to such problems, however, would rarely be found in the courts. A court cannot mediate. It can only grant or deny divorce upon evidence directed to

statutory grounds for divorce. Whether or not the stubborn refusal of a foreign-born spouse to attempt to adjust to the social and cultural concepts common to the people of this country could constitute such cruelty as to justify divorce must abide decision in that kind of a case. There is no evidence in this record to justify sustaining the decree in this case for that reason.

■ If there has been a failure to adjust in this case it seems equally if not more the failure of plaintiff to meet the responsibility he assumed when he married defendant. True, he provided well for his family's material wants. But we find nothing to show that he devoted any appreciable effort to ease the fear and uncertainties that must confront one, such as this defendant, who needs to try to conform to strange people and problems. We think the plaintiff has shown no wrong imposed upon him which would justify a court in casting adrift this woman and her child.

We must acknowledge that there may be no hope that plaintiff can be reconciled to again live with defendant. It is not for a court to say that such a result, of itself, carries with it a social policy that would justify divorce. The family ills that require divorce as the only remedy are squarely for the legislature to decide. The inability of a spouse to live with a mate, not guilty of a fault proscribed by the statute, is not now one of those ills.

The words of Justice LUSK in *Guinn v. Guinn*, 1950, 188 Or 554, 561, 217 P2d 248, are pertinent to this case:

"Marriage under our law is a civil contract in which the state has a vital interest. It is not to be dissolved by mutual agreement nor for light reasons. It is still true that the integrity of the family is basic to our American civilization. 'The public

policy relating to marriage is to foster and protect it, to make it a permanent and public institution, to encourage the parties to live together, and to prevent separation.' 9 R.C.L. 252, quoted with approval in *Hodler v. Hodler*, 95 Or. 180, 198, 185 P. 241, 187 P. 604. The marriage relation will be dissolved by the state for conduct of a spouse amounting to 'cruel and inhuman treatment or personal indignities rendering life burdensome'. § 9-907 (6), O.C.L.A., as amended by Oregon Laws 1949, Ch. 154. It is cruel and inhuman treatment for which Mrs. Guinn indicts her husband. These are strong words, much watered down in these days of easy divorce. But they certainly do not comprehend every slight defect of character in a husband or a wife, nor every lapse from the highest standard of marital conduct. They suggest rather a purpose of one spouse to injure the other, or such gross and callous want of consideration for the sensibilities and legitimate wishes and interests of the other as to amount in law to such a purpose."

The decree of the circuit court is reversed.

■ Defendant has moved this court for allowance of attorney's fees in prosecuting this appeal. The motion is allowed. ORS 107.100 (3). Defendant is allowed her costs and disbursements on this appeal, including an attorney's fee of $550. The amount allowed is the fee recommended by the Schedule of Minimum Fees and Charges of the Oregon State Bar.